AO 91 (Rev. 11/11) Criminal Complaint

**SEALED**

CLERK'S OFFICE U.S. DIST. COURT
AT HARRISONBURG, VA
FILED

# UNITED STATES DISTRICT COURT
for the
Western District of Virginia

APR 24 2014

JULIA C. DUDLEY, CLERK
BY: /s/ B. Botkin
DEPUTY CLERK

| | |
|---|---|
| United States of America<br>v.<br>Jorge Covarrubiaz<br><br>*Defendant(s)* | )<br>)<br>) Case No. 5:14mj00024<br>)<br>)<br>)<br>) |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __02/03/2014__ in the county of __Rockingham__ in the __Western__ District of __Virginia__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. Section 841(a)(1) | Knowingly and intentionally possessed with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule II controlled substance. |

This criminal complaint is based on these facts:

See Attached Affidavit

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Paul A. Laconti, TFO, DEA
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 04/24/2014

_____
*Judge's signature*

City and state: Harrisonburg, VA

James G. Welsh
*Printed name and title*

SEALED

IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF VIRGINIA
HARRISONBURG DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Case No. 5:14mj00024 |
| | ) | |
| JORGE COVARRUBIAZ, | ) | |
| | ) | |
| Defendant | ) | |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
AND ARREST WARRANT**

I, Paul A. Loconti, a Task Force Officer with the United States Drug Enforcement Administration (DEA), being duly sworn, state as follows:

**INTRODUCTION**

1. I am a Deputy Sheriff with the Loudoun County Sheriff's Office (LCSO), Leesburg, Virginia, and have been since 2001. I am currently assigned to the DEA High Intensity Drug Trafficking Task Force located in Annandale, Virginia (Group 12). I have been assigned to this unit since September 2008. Additionally, I have been a law enforcement officer in the Commonwealth of Virginia since 1996 and have been an investigator with the Vice/Narcotics Unit for approximately ten years. I am responsible specifically for the enforcement of the statutes of the Virginia code pertaining to the possession and distribution of narcotics and controlled dangerous substances, as well as federal drug trafficking laws, such as Title 21, United States Code, Sections 841(a)(1) and 846.

2. I have received training from the Fairfax County Criminal Justice Academy and the Department of Criminal Justice Services in the areas of drug identification, narcotics investigations, undercover investigation, search and seizure, covert communications and

1

surveillance, and prostitution/gambling operations. I have conducted and assisted in numerous drug related arrests, seizures, and search warrants involving the investigation of drug trafficking on the state and federal level.

3. I have acted in an undercover capacity, acted as the case agent, and assisted as a tactical team leader during these drug operations. In addition, I have assisted with the investigation and prosecution of numerous federal cases. I have been certified as an expert witness concerning possession with the intent to distribute illegal drugs.

4. As a narcotics investigator, I have interviewed many individuals involved in drug trafficking and have obtained information from them regarding the acquisition, sale, importation, manufacture, and distribution of controlled substances. Through my training and experience, I am familiar with the actions, habits, traits, methods, and terminology utilized by the traffickers and abusers of controlled dangerous substances.

5. Based upon this experience, I have become knowledgeable of the methods and modes of narcotics operations, and the language and patterns of drug abuse and trafficking. During the course of my participation in investigations of narcotics trafficking organizations, I have testified in trial, grand jury proceedings, and at preliminary and detention hearings. Through my employment with the DEA, I have gained knowledge in the use of various investigative techniques, including the utilization of wiretaps, physical surveillance, undercover agents, confidential informants, cooperating witnesses, the controlled purchases of illegal narcotics, electronic surveillance, consensually monitored recordings, investigative interviews, financial investigations, the service of administrative and grand jury subpoenas, and the execution of search and arrest warrants.

6.  This affidavit is submitted in support of a criminal complaint and arrest warrant for Jorge COVARRUBAIZ (hereinafter referred to as COVARRUBAIZ).

7.  Wherever in this affidavit I discuss information resulting from physical surveillance conducted in this investigation, that information, except where otherwise indicated, does not set forth my own personal observations, but rather that which has been provided directly or indirectly to me through other law enforcement officers who made such observations. Additionally, unless otherwise noted, wherever in this Affidavit I assert that a statement was made by an individual, such statement is described in substance herein, and is not intended to be a verbatim recitation of such statement. Furthermore, any statements excerpted from recorded conversations, including those that are quoted, are subject to further revision for clarification and/or accuracy.

8.  This affidavit contains information necessary to support probable cause for this application. It is not intended to include each and every fact and matter observed by me or known to the government regarding the investigation.

## FACTS ESTABLISHING PROBABLE CAUSE

9.  On February 3, 2014, Trooper Joseph Miller of the Virginia State Police (VSP) observed a blue Kenworth tractor trailer bearing California registration VP77781 (hereinafter referred to as Target Vehicle) traveling northbound on Interstate 81 in Rockingham County, Virginia. Trooper Miller recognized the Target Vehicle because Trooper Miller had conducted a traffic stop on the same Target Vehicle in December of 2013 based upon a defective equipment related violation. On February 3, 2014, Trooper Miller observed a similar violation and initiated a traffic stop on the Target Vehicle near mile post marker 262, on I-81 north, Rockingham County, Virginia

located within the Western District of Virginia. COVARRUBAIZ provided a California driver's license, and was the driver and sole occupant of the Target Vehicle.

10. Trooper Miller obtained COVARRUBAIZ's travel documents, which included COVARRUBAIZ's driver's log and bill of laden for the legitimate freight loaded on the Target Vehicle. Trooper Miller noted that not only was COVARRUBAIZ the same driver who had been operating the Target Vehicle during the previous December 2013 traffic stop, but also that COVARRUBAIZ had provided to him (Trooper Miller) the same bill of laden from the previous stop. Specifically, Trooper Miller noted a tear on the bill of laden document that Trooper Miller himself had torn during his December 2013 traffic stop. Additionally, the bill of laden displayed the December 2013 date (not a current, February 2014 date). Finally, Trooper Miller noted that the legitimate load, described as seven green military-style containers (see photograph in Attachment A) were the same color and style as those containers that COVARRUBAIZ had been hauling during the December 2013 traffic stop.

11. A VSP drug detection K-9 arrived and alerted to the odor of narcotics while conducting an exterior sniff of the Target Vehicle. Based on this, VSP Troopers conducted a search of the Target Vehicle and recovered a total of thirty-two (32) kilogram-sized packages concealed within the Target Vehicle's battery box and equipment box. Specifically, twenty-one (21) packages were wrapped in red duck-tape marked "Bold" and one package wrapped in green cellophane marked "Tuera" were located in the vehicle's battery box. Ten (10) of the packages were wrapped in red duck-tape and marked "Verde," and were located in the equipment box. It should be noted that the battery box is located on the Target Vehicle, just below the driver's door (see Attachment A). In fact, to enter the driver's side cab, the driver would have to use the battery box as a step to access to the driver's seat. The equipment box is located just behind the

4

battery box. NOTE: Photographs within Attachment A illustrate these locations. A field-test was conducted on one of the packages marked "Bold" and yielded a positive result for the presence of cocaine. A field-test was conducted on one of the packages marked "Verde" and yielded as positive result for the presence of heroin. Finally, a field-test was conducted on the package wrapped in green cellophane and marked "Tuera" which yielded a positive result for the presence of heroin. The packages were submitted to the DEA Mid-Atlantic Drug Laboratory for final analysis, and testing confirmed that the packages contained chemicals containing cocaine and heroin, as outlined above.

12. COVARRUBAIZ was placed in custody and searched prior to being transported. During a search of COVARRUBAIZ, Trooper Miller recovered a pocket knife from the person of COVARRUBIAZ; the word "SINALOA" was etched into the handle of the knife. Based on my training and experience, I am familiar with the Sinaloa Cartel, which is known to be a large scale Drug Trafficking Organization (DTO) operating out of Sinaloa, Mexico. This DTO is responsible for bulk quantities of illicit drugs and drug proceeds being transported into and out of the United States. I am also aware that large scale DTO's use tractor trailers to transport bulk quantities of drugs and/or drug proceeds throughout the United States. Furthermore, I am aware that the drivers selected to transport drugs and bulk currency are often known and trusted by the members of the DTO as such practices are illegal and inherently dangerous. In addition to the etched pocket knife recovered from COVARRUBAIZ's person, Trooper Miller also recovered a second driver's log, which contradicted the driver's log COVARRUBAIZ initially provided law enforcement.

13. COVARRUBAIZ was transported to a local police department to be processed and interviewed. Following this, your affiant along with other DEA agents arrived and conducted a

post-Miranda interview of COVARRUBAIZ. During this interview, COVARRUBAIZ said that he was the only driver of the Target Vehicle, and that he had keys to the truck and to any containers in or on the truck that can be locked. COVARRUBAIZ further explained that as a matter of practice, he conducts a pre-trip inspection of his truck prior to traveling. In fact, prior to leaving California on this trip, COVARRUBAIZ stated that he secured his legitimate load and drove around the block to ensure the load was secure before traveling on the interstate highways. During the course of the interview, COVARRUBAIZ gave agents two hypothetical situations explaining the manner in which such a drug delivery could occur. First, COVARRUBAIZ advised that one delivery method would be to use a follow vehicle that would escort the load (containing contraband) to a customer and final destination. He then explained that under the second delivery method, someone would provide a "customer's" telephone number to the driver as the driver neared his final destination, which would allow the driver and customer the opportunity to communicate and arrange a meeting location. In my training and experience surrounding the investigation of large scale DTOs, these methods are common ways in which transport coordinators facilitate the meetings for the transfer of drugs and/or drug proceeds between their drivers and customers.

## CONCLUSION

14. Based on the facts outlined above, there is probable cause to believe that on or about February 03, 2014, COVARRUBAIZ knowingly and intentionally possessed with the intent to distribute 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine, a Schedule II controlled substance, and 1 kilogram or more of a mixture or substance containing a detectable amount of heroin, a Schedule II controlled substance, all in violation of 21 U.S.C. § 841(a)(1).

_____
Paul A. Loconti
Drug Enforcement Administration
Task Force Officer

Sworn and subscribed to before me

This 24th day of April 24, 2014.

_____
JAMES G. WELCH
UNITED STATES MAGISTRATE JUDGE

7